UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CEDRIC J. GRIFFIN #366696** | **CASE NO. 3:24-CV-00959 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DONNIE ADAMS** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment [doc. #14] filed by Defendant Warden Donnie Adams. The motion is unopposed. For reasons set forth below, **IT IS RECOMMENDED** that the Motion for Summary Judgment be **GRANTED,** and Plaintiff Cedric J. Griffin's claims be **DISMISSED WITHOUT PREJUDICE** on the merits, but **DISMISSED WITH PREJUDICE** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

### Background

Plaintiff Cedric J. Griffin ("Griffin"), a prisoner at Union Parish Detention Center ("UPDC"), proceeding pro se and in forma pauperis, filed this proceeding on July 17, 2024, against Warden Donnie Adams ("Adams"). [doc. #1]. Griffin alleges that the conditions at UPDC are "very, very poor." *Id.* at p. 3. His dormitory contains mold, mildew, and bed bugs. *Id.* The bed bugs have been biting Griffin's chest, and his chest is not able to properly heal. *Id.* at p. 5. Griffin argues that the vents need to be changed due to rust, and paint is peeling off the walls. *Id.* at p. 3. Maintenance came to put primer on the rusty vents, and Griffin was forced to breathe in primer

"all night long." *Id.* at p. 6. Griffin is forced to eat off tables with trash bags over them due to the rust, and he lives with four other inmates in a six by nine cell. *Id.* at p. 5. There are only two beds, so Griffin was forced to sleep on the floor for six days. *Id.* Additionally, the showers are rusted, contain mold, have roaches, and the paint is peeling off the walls. *Id.* Griffin has stated his concerns to Adams, but he has failed to take any actions. *Id.*

Griffin further alleges that there are "no good diet foods" at UPDC. *Id.* at p. 6. He informed staff that he is allergic to oatmeal, but he has been given oatmeal for at least at three of his meals each week. *Id.* Sometimes the food provided is spoiled or cold. *Id.*

Due to these conditions, Griffin asserts that he is unable to breathe. *Id.* at pp. 3-4. Further, he does not have 24/7 access to a doctor. *Id.* Griffin's hair is falling out due to the stress, pain, and mental problems these conditions have caused him. *Id.* at p. 5. He asserts that he is being held hostage to breathe mold, mildew, and old paint. *Id.* at p. 6.

Griffin did not file a prison or administrative grievance based upon the same facts as the basis of this lawsuit. *Id.* at p. 2. He explained that no administrative grievance was ever filed because "[he is] scared for [his] life in Donnie Adam's Detention Center." *Id.*

On March 31, 2025, Adams filed a Motion for Summary Judgment. [doc. #14]. Adams argues that Griffin's claims should be dismissed because "(1) he did not exhaust his administrative remedies and (2) his claims—whether construed as federal or state law claims—fail on the merits. . ." [doc. #14-1, p. 7]. UPDC is a parish correctional center that houses prisoners of the Louisiana Department of Public Safety and Corrections ("DOC") pursuant to an agreement between UPDC and DOC. *Id.* At all times while incarcerated at UPDC, Griffin has been a prisoner of the DOC.

2

*Id.* Griffin currently resides in "M Dorm," but all his allegations concerning conditions relate to his time in "N Dorm." *Id.*

Adams contends that whether Griffins' claims arise under Louisiana or federal law, his failure to exhaust administrative remedies warrants dismissal. *Id.* at pp. 9-10. UPDC's administrate remedy procedure for all inmates was set forth in an "Offender Handbook." *Id.* at p. 10. UPDC provides the most up-to-date version of the Offender Handbook to all inmates upon booking. *Id.* at p. 11. However, Griffin still failed to file any written administrative grievance form. *Id.* at p. 12.

Adams further argues that Griffin's claims should be dismissed with prejudice on the merits. *Id.* at p. 13. Griffin's Section 1983 official capacity claims against Adams are construed as a claim against UPDC and should be dismissed for failure to satisfy the elements of a municipal liability claim. *Id.* at p. 14. Alternatively, even if Griffin's claims are construed as Section 1983 claims against an individual, he cannot show any Eighth Amendment violation. *Id.* at p. 16. To the extent that Griffin has asserted a negligence claim, it also fails as Griffin cannot show causation. *Id.* at p. 24.

Opposition to the Motion for Summary Judgment was due no later than April 22, 2025, but Griffin filed no opposition. Therefore, the motion is unopposed.

Accordingly, the matter is ripe.

## **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his

burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in any *case* 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271, at *2 (5th Cir. 1993).

## Discussion

### I.     Administrative Exhaustion

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative

---

[1] I.e., beyond doubt.

process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 F. App'x 933, 934 (5th Cir. 2009) (citing *Woodford*, 548 U.S. at 89-93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Consequently, defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor. *Id.*

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies irrespective of the form of relief sough, injunctive or monetary." *Richbourg v. Horton*, No. 08-10443, 2008 WL 5068680, at *2 (5th Cir. 2008) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 F. App'x 564, 566 (5th Cir. 2003).

If required by the terms of the prison's grievance procedures, a prisoner must exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *See Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion). Moreover, to the

extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates v. St. Tammany Par.*, No. CIV.A. 13-5732, 2014 WL 1457777, at *3 n.10 (E.D. La. Apr. 15, 2014) (and cases cited therein); *see also Hicks v. Lingle*, 370 F. App'x 497, 498-99 (5th Cir. 2010) (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson*, 776 F.3d at 300 (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

In 2016, the Supreme Court explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (citations omitted).[2]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 F. App'x 365, 366 (5th Cir. 2007) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon*, 596 F.3d at 268 (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading

---

[2] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 F. App'x 187, 190 (5th Cir. 2015).

7

information by prison officials may make remedies unavailable. *Id.* "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Id.* at 267-68 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008)).

Although this case is in federal court, the Court will apply the Louisiana Prison Litigation Reform Act ("LA PLRA") to Griffin's state law claim. *See McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 798321, at *11 (M.D. La. Feb. 18, 2020); *see also Morales v. McCulloh*, No. CV 18-808-SDD-RLB, 2019 WL 2774324, at *3 (M.D. La. July 2, 2019). As the Fifth Circuit has explained:

> Under the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 [] (1938), federal courts hearing state-law claims apply state substantive law and federal procedural law. But the line between substance and procedure can be a murky one, and exhaustion requirements are among those "matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472 [] (1965). Because the Federal Rules of Civil Procedure do not address administrative exhaustion, we determine whether we should treat the issue as substantive or procedural by looking to "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws . . ." *Id.* at 468 []. Litigants would engage in forum shopping if federal courts and state courts applied different administrative exhaustion regimes, because some claims could proceed in one court system but not the other. Further, it would be unfair for non-diverse litigants to be able to proceed in state court when diverse but otherwise identically situated litigants could not proceed because their case was in federal court. Thus, we treat administrative exhaustion as substantive for *Erie* purposes . . . .

*Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 786 F. App'x 457, 460-61 (5th Cir. 2019).

The LA PLRA provides that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." La. R.S. § 15:1184(A)(2). Under Louisiana law, if an inmate files suit "prior to exhaustion of administrative remedies, the district

8

court lacks jurisdiction over the matter, and the suit shall be dismissed without prejudice." *Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.*, 2016-0995 (La. App. 1 Cir. 6/2/17), 222 So.3d 63, 66. "[T]he requirements under the Louisiana PLRA and the Federal PLRA are substantively similar, so [courts should] consider both together." *Donahue v. Wilder*, 824 F. App'x 261, 265 (5th Cir. 2020).

## II.     Evidence Presented

In support of his motion for summary judgment, Adams submitted his declaration, averring in pertinent part:

1. Adams is employed as the Warden of UPDC and was at all times in 2024. He is the keeper of records for UPDC and has access to UPDC's records in the form in which they are originally made and maintained.

2. UPDC houses prisoners of the DOC. At all times while incarcerated at UPDC, Griffin was a prisoner of the DOC.

3. UPDC's ARP for inmate grievances is set forth in an "Offender Handbook." All inmates are provided the handbook upon booking.

4. UPDC has a three (3) step ARP process relative to DOC inmates, such as Griffin.

5. Step one of the ARP is to file a written grievance with the Warden within thirty days of the date of the incident made subject of the grievance. Written grievance forms are readily available to inmates at UPDC and can be obtained from the control rooms.

6. If Griffin had filed a grievance pursuant to UPDC's ARP, a copy of the grievance would have been in Griffin's inmate file, which is stored in a file room at UPDC.

7. After a diligent search, Adams found no record of Griffin ever filing a grievance pursuant to the ARP.

(Donnie Adams Declaration; MSJ, Exh. A [doc. #14-4]).

Adams also provided the UPDC's Offender Handbook. (UPDC Handbook; MSJ, Exh. A-1 [doc. #14-5]). Therein, the handbook explains the grievance process that must be followed. *Id.* at pp. 2-4. It explicitly states that "[if an offender does not timely follow each step of the procedure, he may be barred from later bringing his grievance forward.]" *Id.* at p. 2. Further, it states that "[offender grievance forms may be obtained from control rooms.]" *Id.* at p. 4. Adams also attached a blank ARP form that is available to inmates at UPDC. (ARP Form; MSJ, Exh. A-2 [doc. #14-6]).

Additionally, Adams provided the Court with Griffin's deposition. (Griffin Deposition; MSJ, Exh. B [doc. 14-7]). Griffin testified that he has never seen a grievance form before. *Id.* at p. 24. However, he also admitted that he did not file an administrative grievance based upon the same facts which form the basis of this lawsuit. *Id.*

Griffin failed to file an opposition to the motion for summary judgment. Thus, Griffin has presented no evidence or support to show that an ARP was filed or exists regarding the claims against Adams. Griffin has likewise provided no evidence or support demonstrating that he lacked a way to verify the administrative grievance process.

### III. Analysis

In support of his motion for summary judgment, Adams adduced competent summary judgment evidence to show: 1) that UPDC had an available grievance policy for offenders housed there; and 2) UPDC never received a grievance pertaining to the claims at issue in this case. Griffin has provided no evidence or support to the contrary to raise a genuine issue of material fact. In both his Complaint and his deposition, Griffin stated that he was scared for his life and that this

fear prevented him from filing an administrative grievance. He testified that "[p]eople get locked up in here, and they don't get out the hole until like 60 or 70 days." [doc. #14-7, p. 25]. Griffin explained that he believed his life was in danger simply because he was incarcerated. *Id.* However, he admitted that no one ever threatened him or gave him any indication, through words or actions, that something negative would happen if he filed a written grievance. *Id.* at pp. 25-26. Griffin's speculative fear that adverse consequences might result from submitting a grievance is not sufficient to excuse his failure to comply with the ARP. He has not shown that he lacked access to or was otherwise prevented from discovering the grievance procedures at UPDC. In sum, on the existing record, no reasonable trier of fact could find that Griffin exhausted UPDC's grievance procedure for his claims against Adams. *See Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party).[3]

The plain language of the PLRA and LA PLRA precludes any further action on Griffin's claims until he has fully exhausted the administrative remedy procedure.[4] Dismissal is the remedy,

---

[3] In this case, neither Griffin nor Adams has made a jury demand. "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). In this non-jury, pro se prisoner suit, the undersigned magistrate judge ordinarily is the trier of fact at a hearing held pursuant to *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), modified on other grounds, 964 F.2d 400 (5th Cir. 1992), which "amounts to a bench trial replete with credibility determinations and findings of fact." *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995).

[4] *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214 (2007)) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending. . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

11

and, although it is typically without prejudice,[5] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to re-file it in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007).

The foregoing approach is appropriate here. Accordingly, if Griffin exhausts his administrative remedies with respect to the claim raised herein, he may present his claims again but may not proceed in forma pauperis to do so.[6]

Having determined that Griffin's claims are subject to dismissal for failure to exhaust administrative remedies, the Court does not reach the merits of his claims. The undersigned will not address Adams' alternative argument that he did not violate Griffin's Eighth Amendment right or that he did not act negligently. *See* [doc. #14-1, pp. 16, 23]; *see Marshall v. Price*, 239 F.3d 365 (5th Cir. 2020) (declining to reach the merits of an inmate's Section 1983 claims after finding that he failed to exhaust his administrative remedies).

---

[5] *See, e.g., Plaisance v. Cain*, 374 F. App'x 560, 561 (5th Cir. 2010); *Cooper v. Quarterman*, 342 F. App'x 12, 13 (5th Cir. 2009).

[6] Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90. At this point, Griffin's delay effectively may foreclose his ability to properly exhaust available administrative remedies.

**Conclusion**

For the above-assigned reasons,

**IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. #14] filed by Defendant Warden Donnie Adams be **GRANTED** and that Plaintiff Jamie Lindsey's claims be **DISMISSED WITHOUT PREJUDICE** on the merits but **DISMISSED WITH PREJUDICE** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for an extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 18th day of July, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE